# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| 1800 W. LAKE STREET LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 14 C 420 |
| AMERICAN CHARTERED BANK and SCHERSTON REAL ESTATE INVESTMENTS, LLC, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff 1800 W. Lake Street, LLC obtained a loan from American Chartered Bank, repayment of which was secured by a mortgage on real property located at 1800 W. Lake Street in Chicago. In addition, plaintiff and its affiliates obtained other loans from American Chartered related to other parcels of real property, as well as loans to pay taxes on those properties. Plaintiff was in danger of defaulting, and it entered into a series of forbearance agreements with American Chartered. Pursuant to one of these agreements, Plaintiff agreed to place a deed to the 1800 W. Lake Street property in escrow so that if Plaintiff defaulted, American Chartered would have the right to record the deed in lieu of foreclosing on its mortgage. Under the parties' agreement, if American Chartered recorded the deed, certain of plaintiff's loans from American Chartered would be deemed paid in full.

Plaintiff defaulted, and American Chartered, through its affiliate Scherston Real

Estate Investments, LLC, recorded the deed. Plaintiff then became insolvent and filed for bankruptcy. In connection with the bankruptcy case, plaintiff has sued American Chartered and Scherston, seeking to set aside the transfer of the property as fraudulent pursuant to 11 U.S.C. § 548. Specifically, plaintiff alleges that it did not receive reasonably equivalent value in exchange for the transfer.

Defendants have moved for summary judgment. For the reasons that follow, the Court denies defendants' motion.

**Background**

The following facts are derived from the parties' statements and exhibits filed pursuant to Northern District of Illinois Rule 56.1.

Plaintiff 1800 W. Lake Street, LLC is an Illinois limited liability company. On October 25, 2006, plaintiff obtained a loan of $1,475,000 (the "Original Loan") from defendant American Chartered. The loan was secured by a mortgage in favor of American Chartered on real property located at 1800 W. Lake Street in Chicago (the "Property").

On March 31, 2009, plaintiff and American Chartered entered into a forbearance agreement related to the Original Loan. Pursuant to the agreement, American Chartered agreed to forego enforcing certain rights and remedies related to the Original Loan, through November 30, 2009. On March 31, 2010, plaintiff and American Chartered entered into a subsequent forbearance agreement. Pursuant to this agreement, American Chartered agreed to forego exercising rights and remedies against plaintiff related to the Original Loan through October 1, 2010, and if certain conditions were met, through October 1, 2011. In addition, American Chartered made a

new loan to plaintiff of $299,000 (the "Tax Loan") to pay past due real estate taxes on the Property.

In August 2010, plaintiff and American Chartered executed a second amendment to the forbearance agreement. Pursuant to this agreement, plaintiff agreed to give American Chartered a deed to the Property for American Chartered to hold in escrow. The agreement provided that if plaintiff defaulted on its obligations, American Chartered was entitled to record the deed in lieu of foreclosing on its mortgage and thereby take title to the property. To put it another way, plaintiff obtained American Chartered's agreement to hold off foreclosure in the short term by making it easier for American Chartered to foreclose in the future if plaintiff ultimately was unable to pay off the loan. The agreement also specified that the recording of the deed would not reduce any of plaintiff's debts to American Chartered, "with the sole exception that the [Original Note] and the [Tax Note] shall be deemed paid in full." Defs.' Ex. M at 4.

In March 30, 2011, plaintiff and American Chartered executed a third amendment to the forbearance agreement. Pursuant to this agreement, American Chartered extended the maturity dates of the Original Loan and the Tax Loan and converted payments under the Original Loan to interest-only payments. Additionally, the principal balance of the Tax Loan was increased by $62,000 to pay past due interest on the Original Note and past and future real estate taxes applicable to the Property, so that American Chartered could maintain the priority of its lien on the Property. Defs.' Ex. O at 3. The parties' fourth through ninth amendments to the forbearance agreement extended maturity dates and amortization schedules on loans made by American Chartered.

3

On or about October 1, 2013, plaintiff defaulted on its obligations under the forbearance agreement as amended. On October 18, 2013, American Chartered, through its affiliate Scherston,[1] recorded the deed to the Property. As of that date, the outstanding balance of the Original Loan was approximately $1,461,670, and the outstanding balance of the Tax Loan was approximately $313,616. On November 23, 2013, American Chartered obtained an appraisal of the Property by Great Realty Advisors. Defs.' Ex. W. This appraisal valued the Property at $1.7 million, which was approximately the same amount as the total owed on the Original and Tax Loans. *Id.* at 66.

On December 27, 2013, plaintiff filed a Chapter 11 bankruptcy petition. It then filed an adversary proceeding against defendants in bankruptcy court. Plaintiff alleged that the transfer of the Property via defendants' recording of the deed constituted a fraudulent transfer under 11 U.S.C. § 548 and should be set aside. On January 21, 2014, plaintiff moved to withdraw the reference of the adversary proceeding to the bankruptcy court. This Court granted the motion, which defendants did not oppose.

On March 11, 2014, plaintiff obtained its own appraisal of the Property. Defs.' Ex. X. This appraisal valued the property at $2,710,000. *Id.* at 67.

## Discussion

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of

---

[1] Scherston held the deed on behalf of American Chartered because American Chartered's charter does not permit it to hold real estate.

4

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *E.g., Kersting v. Wal–Mart Stores, Inc.,* 250 F.3d 1109, 1114 (7th Cir. 2001).

Plaintiff seeks to avoid the transfer of the property that was accomplished via defendants' recording of the deed, contending that the transfer was fraudulent under 11 U.S.C. § 548. Under section 548, a bankruptcy trustee or debtor in possession may avoid a transfer as constructively fraudulent if it shows that the debtor "received less a reasonably equivalent value in exchange for such transfer" and was insolvent on the date of the transfer or became insolvent as a result of the transfer. *Id.* § 548(a)(1)(B). It is undisputed that plaintiff was insolvent at the relevant time; the only issue is whether plaintiff received reasonably equivalent value for the transfer of title to the Property.

"Whether 'reasonably equivalent value' was received in a transaction is a question of fact." *In re Image Worldwide, Ltd.*, 139 F.3d 574, 576 (7th Cir. 1998). This evaluation requires the fact-finder "to determine the value of what was transferred and to compare it to what was received." *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). The standard for reasonable equivalence depends on the facts of the particular case, "an important element of which is fair market value." *Id.*

It is undisputed that in return for the deed to the Property, plaintiff obtained the discharge of the obligations in the Original Loan and the Tax Loan, a total of a little under $1.8 million. Plaintiff's contention that it did not receive reasonably equivalent value is largely based on the $900,000 disparity between this and the $2.7 million that

5

its appraiser says the property was worth.

The value of the property is genuinely disputed. Defendants have an appraisal that valued the property at $1,700,000, and they received an offer to purchase the Property for $1,650,000. But plaintiffs have an appraisal that values the Property at $2,710,000. Both appraisals are based on sales of nearby properties deemed to be sufficiently comparable by the respective appraisers, and defendants do not attack the methodology of plaintiff's appraiser. It is true that defendants' appraisal was done closer to the date on which the property was transferred than plaintiff's appraisal, but it is unlikely that this accounts for the substantial disparity. There is no basis to believe, or at least defendants have offered no basis to believe, that the real estate market in the relevant area got that much better in the less than four months between November 23, 2013, when defendants' appraisal was done, and March 11, 2014, when plaintiff's was done. Nor does the fact that defendant has received an offer on the property that is closer to the amount of its appraisal permit the Court to disregard, in the context of a summary judgment motion, plaintiff's higher appraisal.

Defendants argue that plaintiff obtained a good deal more than the forgiveness of the two loans, specifically, forbearance on collection efforts and foreclosure, adjustments to the loans, and additional financing, including for affiliated entities. The Court agrees with defendants that it is appropriate to take all the surrounding circumstances into account in making the "reasonable equivalent value" determination under section 548. *See, e.g., Anand v. Nat'l Republic Bank of Chicago*, 239 B.R. 511, 518 (N.D. Ill. 1999). But even if one does so, it is unclear—and the Court cannot determine on summary judgment based on the present record—that the other

6

consideration that plaintiff obtained is enough to bring defendants into "reasonably equivalent value" territory.[2] In particular, though defendants have provided all of the documentation regarding the forbearance agreement and its amendments, they have made no effort to put a value on the other consideration that they contend plaintiff received or benefitted from. And defendants themselves benefitted significantly from the forbearance agreement as well, by avoiding a judicial foreclosure process. If all of the circumstances are to be considered in doing the analysis of reasonably equivalent value, then benefits that defendants received presumably should also be taken into account in comparing what was exchanged.

Defendants' primary argument seems to be that even if the Property is worth what plaintiff contends, any surplus that might exist after its sale would be applied to loans owed by plaintiff's affiliates and any surplus remaining after that would be refunded to plaintiff. Thus, defendants argue, what they actually will get does not exceed reasonably equivalent value of what plaintiff gets. Plaintiff disputes this, saying that defendants' contention about what would happen to a surplus is speculative. *See* Defs.' LR 56.1 Stat. ¶ 68; Pl.'s Resp. to Defs.' LR 56.1 Stat. ¶ 68. In support of their contention on this point, defendants cite an affidavit submitted by an officer of American

---

[2] Defendants cite *In re 4100 West Grand LLC*, 481 B.R. 444, 448 (Bankr. N.D. Ill. 2012), but the case does not help them. There the debtor had a $2.1 million loan secured by a lien on real property. The defendant agreed to reduce the loan balance to $460,000 if certain conditions were met and if it was given a deed in lieu of foreclosure. The debtor defaulted on the loan, and the defendant recorded the deed. The debtor sought to set aside this transfer as constructively fraudulent, saying that the only value received was discharge of a $460,000 loan. But because the debtor had not met the conditions for reducing the loan balance to that amount, the appropriate comparison was with the amount still due on the loan, over $2 million. The court held that discharge of a $2 million obligation was more than reasonably equivalent to what the creditor got in exchange, namely the recording of a deed to property valued at around $1.1 million and $485,000 cash. That is nothing like what is at issue here.

7

Chartered. But this contention in the affidavit is not supported by citation to any of the voluminous documents that accompany the affidavit. *See* Affid. of Bryn Perna ¶ 34. And from the Court's reading, the forbearance agreement says the opposite; it provides that plaintiff and its affiliates "shall remain 100% liable for all other liabilities other than solely relating to the [Original Note] and [Tax Note]." Defs.' Mem. Ex. M at 4. The Court sees nothing (nor do defendants cite anything) in the forbearance agreement or its amendments that indicates that a surplus upon American Chartered's disposition of the Property would go to plaintiff as it would have in the event of a foreclosure sale—the route that American Chartered avoided by way of the forbearance agreement.

Defendants also argue that summary judgment is appropriate because they obtained summary judgment in a similar fraudulent transfer suit brought by one of plaintiff's affiliates, 1756 W. Lake Street, LLC, in a case arising from a related series of transactions. *See 1756 W. Lake St., LLC v. Am. Chartered Bank*, No. 14-C-1869, 2014 WL 5073354, at *1 (N.D. Ill. Oct. 9, 2014). The Court disagrees. In *1756 W. Lake Street, LLC*, the property transferred via the deed had been appraised at around $1.7 million, and the value of the debt discharged was around $1.5 million. The court reasoned that even if it credited plaintiff's $1.7 million appraisal, it did not need to inquire into the value of additional consideration plaintiff received via forbearance and loan adjustments in order to find that it had received reasonably equivalent value. The disparity between the discharged debt and the property value in the present case, however, is greater by several orders of magnitude.

## Conclusion

For the reasons stated above, the Court denies defendants' motion for summary

8

judgment [docket no. 15]. The case is set for a status hearing on January 5, 2015 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 22, 2014